NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0733

TOYOTA MOTOR CREDIT CORPORATION

VERSUS

KIMBERLY L. ROBINSON, SECRETARY, DEPARTMENT OF
REVENUE, STATE OF LOUISIANA

Judgment Rendered:   MAY 0 9 2022

Appealed from the
Board of Tax Appeals
State of Louisiana
Docket Number 9749D

Tony Graphia, Cade R. Cole, and Frances "Jay" Lobrano, Board Members
Presiding

*************

William M. Backstrom, Jr.  Counsel for Plaintiff/Second Appellant/
Baton Rouge, LA    Appellee, Toyota Motor Credit Corporation

Christopher K. Jones   Counsel for Defendant/First Appellant/
Antonio C. Ferachi    Appellee, Kimberly Robinson, in her
Baton Rouge, LA    capacity as Secretary for the Department
         of Revenue

BEFORE:  WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**WHIPPLE, C.J.**

In this tax appeal involving a claim for refund of overpayment of franchise taxes, both parties appeal the judgment of the Board of Tax Appeals ("the BTA") granting in part and denying in part each of their cross-motions for summary judgment, ordering a partial refund of franchise taxes, and dismissing all other claims. For the following reasons, we affirm.

## FACTUAL BACKGROUND

Toyota Motor Credit Corporation ("TMCC"), a California corporation, is engaged in various lines of business, all of which it directs and manages at its headquarters in Torrance, California. TMCC's business at issue herein is its Retail Finance line of business, through which it acquires and services Retail Installment Contracts ("RICs") from independent motor vehicle dealers, thus receiving and collecting interest income from those RICs. A RIC is a finance agreement between an applicant/buyer of a motor vehicle and the originating motor vehicle dealer in connection with the sale of a motor vehicle by the dealer to the applicant/buyer, and the motor vehicle **dealer** negotiates the terms of the RIC with the **applicant/buyer**. TMCC is not a motor vehicle dealer and does not engage in the business of selling new motor vehicles. Thus, TMCC is not a party to any RICs. Rather, TMCC's business involves acquiring RICs from independent motor vehicle dealers after dealers have entered into RICs with their customers.

When a customer of a Toyota/Lexus motor vehicle dealer chooses to finance the purchase of a vehicle from the dealer, the customer and the dealer complete a "Credit Application," which the dealer submits to a financing institution, such as TMCC. When a Credit Application is submitted to TMCC by a motor vehicle dealer located in Louisiana, or by a limited number of motor vehicle dealers in Mississippi, the Credit Application is submitted electronically to a Credit Analyst

2

located at TMCC's Louisiana Dealer Sales and Services Office ("DSSO"). TMCC operates thirty DSSOs in the United States, including the one in Louisiana.

Upon receipt of the Credit Application, TMCC either approves or denies the Credit Application. If the Credit Application is approved, the motor vehicle **dealer** and the **applicant** may then decide to negotiate and enter into a RIC for the purchase of the motor vehicle.

After entering into RICs with their customers, motor vehicle dealers often offer to sell some or all of the RICs to various financing businesses, including TMCC. Upon acquisition of a RIC, TMCC begins servicing the RIC, and the buyer of the motor vehicle makes payments to TMCC under the terms of the RIC.

The "RICs at Issue" herein are those RICs originated by motor vehicle dealers located in Louisiana and Mississippi that were subsequently submitted by those dealers for review and consideration to TMCC's Contract Analysts in its Louisiana DSSO and then acquired by TMCC from those motor vehicle dealers. Thus, the essential issues presented are whether the computation of TMCC's Louisiana franchise tax obligation should include the value of the RICs at Issue as property situated or used in Louisiana and/or whether the interest income TMCC earned thereon as sales or other revenue is attributable to Louisiana.

## PROCEDURAL HISTORY

On July 7, 2015, TMCC filed a Claim for Refund of Overpayment with the Louisiana Department of Revenue ("the Department"), requesting a refund for an alleged overpayment of its franchise taxes for the franchise tax period beginning on April 1, 2006 and ending on March 31, 2007 ("the 2006 Refund Period").[1] TMCC sought a refund in the amount of $1,134,393.00, contending that for the refund period at issue, it had "improperly" attributed all of the value of the RICs at

---

[1] At the request of the Department, TMCC also filed an amended Louisiana corporate franchise tax form for the franchise tax period at issue, to accompany its refund claim.

3

Issue and all interest income it received thereon to Louisiana in the calculation of its Louisiana franchise tax, where the value of the RICs at Issue and all interest income received should have been attributed to TMCC's commercial domicile in California.[2] By letter dated March 24, 2016, the Department denied TMCC's refund claim.

After the denial of its refund claim, TMCC filed a Petition for Review with the BTA. The Department, through its Secretary, Kimberly L. Robinson, and TMCC thereafter filed cross-motions for summary judgment, with the Department seeking dismissal of all of TMCC's refund claims and TMCC seeking judgment in its favor awarding it the requested refunds.[3] Following a hearing on the cross-motions, the BTA signed a judgment dated February 10, 2021, granting in part and

---

[2]TMCC similarly filed Claims for Refund of Overpayment for the franchise tax period beginning on April 1, 2005 and ending on March 31, 2006 ("the 2005 Refund Period") and the franchise tax period beginning on April 1, 2007 and ending on March 31, 2008 ("the 2007 Refund Period"), on the same basis that it sought a refund for the 2006 Refund Period. Following the Department's denial of those claims as well, TMCC likewise sought review from the BTA. Each of TMCC's three Petitions for Review filed with the BTA was assigned a separate docket number.

[3]We note that, other than the Consolidated Joint Stipulation of Facts filed in the record with both the Department's and TMCC's motions for summary judgment, the attachments thereto and the remaining exhibits relied on by the parties were filed only in the record of BTA Docket Number 9748D (TMCC's Petition for Review of the denial of its refund claim for the 2005 Refund Period).

No motion and order to consolidate TMCC's three Petitions for Review was filed with the BTA below. See LAC 69:I.317.D ("Request[s] for consolidation of cases for hearing [before the BTA] shall be by motion and in writing"). Indeed, the BTA, in its written reasons for judgment herein, stated as follows:

> The parties did not file a formal written motion to consolidate, but filed a Joint Motion to Convert Hearing Date [wherein the parties sought to convert the trial date to a hearing on their cross motions for summary judgment] and a proposed Order captioned as 'BTA Docket Nos.: 9748D, c/w 9749D, and 9750D.' The Board signed the proposed Order on June 1, 2020. Since that date, the cases have proceeded *as though consolidated* without objection from either party.

(Emphasis added). In the absence of a formal order of consolidation from the BTA, this court cannot consider exhibits filed in another BTA record in support or opposition of the parties' motions for summary judgment. See LAC 69:I.317.F ("The rules of evidence followed by the district courts of Louisiana will be followed in hearings before the [BTA]"); LSA-C.C.P. art. 966(D)(2) ("The court may consider only those documents filed in support of or in opposition to the motion for summary judgment ...") & Comments—2015, comment (k); Tillman v. Nationwide Mutual Ins. Co., 2020-0250 (La. App. 1st Cir. 2/22/21), 321 So. 3d 1017, 1022 n.5, writ denied, 2021-00429 (La. 5/25/21), 316 So. 3d 446.

Nonetheless, the Consolidated Joint Stipulation of Facts alone is sufficient for our resolution of the issues presented herein.

denying in part TMCC's motion and granting in part and denying in part the Department's motion.

Relying on its previous decision in GMAC Inc. v. Bridges, Docket Nos. 6998 – 7001, 7012, 7049, 7220, 7221 (La. B.T.A. 2014), 2014 WL 7642226, the BTA concluded that because the value of the RICs at Issue should not have been allocated to Louisiana as property situated or used in Louisiana in the calculation of the apportionment of its franchise tax base, TMCC had made an overpayment of Louisiana corporate franchise taxes for the 2006 Refund Period in the amount of $847,491.00. Accordingly, the BTA granted in part TMCC's motion for summary judgment, denied in part the Department's motion for summary judgment, and ordered the Department to refund TMCC that amount, together with interest. However, again adhering to its earlier ruling in GMAC, and further concluding that interest earned on the RICs at Issue was properly allocated as Louisiana sales or revenue in the calculation of the apportionment of its franchise tax base, the BTA granted in part the Department's motion for summary judgment, denied in part TMCC's motion for summary judgment, and "denied and dismissed" TMCC's claim for all other amounts sought as a refund of overpayments of its 2006 franchise tax. From this judgment, both the Department and TMCC have appealed to this court.[4]

---

[4]While TMCC filed three Petitions for Review addressing each of the three Refund Periods separately, which were each assigned a different docket number and never consolidated below, the BTA's February 10, 2021 judgment addressed all three Refund Periods for which TMCC sought a refund and collectively ordered a refund in the amount of $2,333,557.00, which represented $797,517.00 for the 2005 Refund Period, $847,491.00 for the 2006 Refund Period, and $688,549.00 for the 2007 Refund Period.

A copy of the BTA's February 10, 2021 judgment was then filed into each of the pending docket numbers before the BTA. Both TMCC and the Department filed separate appeals of the BTA's February 10, 2021 judgment as to each of the three refund periods. The present appeal concerns the 2006 Refund Period. The appeals relating to the 2005 Refund Period and the 2007 Refund Period are pending before this court and bear docket numbers 2021 CA 0732 and 2021 CA 0734 respectively. Upon motion of the parties, all three appeals were consolidated in this court for purposes of argument and submission only, and each consolidated appeal is addressed in a separate opinion, all rendered this date.

## CONCLUSION

For the reasons set forth in the companion case of <u>Toyota Motor Credit Corporation v. Robinson</u>, 2021-0732 (La. App. 1st Cir. 5/9/22), ___ So. 3d ___, we affirm the portions of the February 10, 2021 judgment of the Board of Tax Appeals: (1) granting in part and denying in part the Department of Revenue's ("the Department's") motion for summary judgment seeking dismissal of Toyota Motor Credit Corporation's ("TMCC's") claims for a refund of franchise tax paid for the franchise tax period of April 1, 2006 through March 31, 2007 ("the 2006 Refund Period"); (2) granting in part and denying in part TMCC's motion for summary judgment as to its claims for a refund of franchise tax paid for the 2006 Refund Period; (3) decreeing that the value of the Retail Installment Contracts at Issue ("RICs at Issue") for the 2006 Refund Period is not allocated to Louisiana and not included in the numerator of TMCC's Property Ratio in the calculation of the apportionment of its franchise tax base; (4) further decreeing that all interest earned on any RICs at Issue for the 2006 Refund Period was properly included in the numerator of TMCC's Sales and Other Revenue Ratio in the calculation of the apportionment of its franchise tax base; (5) further decreeing that TMCC made an overpayment of its Louisiana corporation franchise tax for the 2006 Refund Period in the amount of $847,491.00 (which represents the amount of franchise tax paid for the 2006 Refund Period resulting from the allocation of the value of the RICs at Issue to Louisiana in the computing of TMCC's Property Ratio); and (6) ordering the Department to refund TMCC that amount together with interest thereon at the rates and for the periods provided in LSA-R.S. 47:1624(A).

Costs of this appeal, in the amount of $2,124.50, are assessed equally against the parties.

**AFFIRMED AS TO THE 2006 REFUND PERIOD.**